Mark Weegee here on behalf of the appellants. The district court essentially conceded that absent its reading of the Casper Wireworks decision that it would have granted the Montana's relief for claim preclusion. This court should reverse that decision and clarify that the Casper Wireworks decision applies only to actions that are declaratory in nature. The claim preclusion analysis in that instance would become straightforward and that Asarco is only seeking coercive relief in the amended adversary proceeding. Then do you still have to show that this claim about the reinstatement could have been brought in that adversary proceeding? Are you saying Casper Wire just puts us back in a regular res judicata world where we look at the preclusive effect of the breach of contract claim? Yes, Your Honor. That you would look at whether the claim could have been brought under the Davis analysis that we've discussed. And so why do you think it could have been? Your Honor, as Davis noted, if the condition proceeding is in control of the plaintiff, then it's incumbent upon the plaintiff to control that or stay the lawsuit until they've asserted the condition proceeding. In fact, here, Asarco could have done that. They could have asserted their three-paragraph demand letter, which they asserted much later. They had the opportunity to do so, they had the cash to do so, and it would not have been complicated and, in fact, similar to obtaining a right to sue letter, as in Davis, to simply go forward to the bankruptcy court and obtain approval to submit or to tender if that was needed. Did you say they had the cash to pay the restitution? Do you know that? Yes. We do know that. And, in fact, in the record itself, in the confirmation order, Record 7004, the district court concluded that there was over a billion dollars in cash in the estate as of the confirmation order. How would that work in bankruptcy, though? They'd have to get court approval or something to do that, right? There would have to be a motion on 21-day notice, and it would be based on the business judgment standard. So if the debtor's business judgment was adequate, here it would be, as Asarco claims, a 20-to-1 return. So we believe that would be easily satisfied. In the adversary itself, Asarco claimed that the facts related to the original claims brought in the adversary were inextricably intertwined, and, in fact, the district court, more importantly, found that the adversary proceeding and this lawsuit, the facts were substantially or there were substantially similar fact situation in the two lawsuits. And so we believe that the traditional analysis with respect to Restatement 24 would apply in this situation. The — if you look at Restatement 24-1, a final judgment bars and extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction. The transaction itself, if the facts are related in time, space, origin, or motivation, time, the issues at play in this lawsuit were the same as the adversary. They were the 2002 and 2003 dilutions and defaults, the disassociation, and all of the actions that were taken in — that formed Asarco being kicked out of the partnership were premised on that. And, in fact, all of the discovery in this action has been premised on those actions. There was no contested fact with respect to the letter that was sent by Asarco. Origin, the origin is the partnership agreement, which was litigated in the original adversary proceeding. The motivation, the same, to recover the 49.9 percent partnership interest. In the adversary proceeding, it was sought by virtue of fraudulent transfer claim as a coercive relief, and in this action by virtue of a contract claim, which was raised initially and dropped by Asarco in the original action. So there's an identity of the exact relief, but it was dropped by Asarco. So the traditional aspects of claim preclusion under the restatement, which has been adopted extensively by the circuit, apply to this action. With respect to the issue of whether this Court should reverse, if this Court affirms based upon the CASPER analysis and applies it to a coercive lawsuit, that would clearly result in a circuit split and would be inconsistent with prior Court precedent. Asarco voluntarily chose, following its initial complaint in the adversary, to proceed with coercive relief and drop its partnership claim, or drop its claim with respect to the reinstatement provision of the partnership. It made that decision after Montana rejected on the merits the claims with respect to the reinstatement clause. And so those claims were clearly at play. Montana Resources had put them at play and did not raise ripeness as a question. And so Montana believes that the claim was not even ripe in that Montana had clearly disputed the applicability of the reinstatement clause. So but even if it were not, Davis would apply in this circumstance. Davis was a discrimination case. Second claim of discrimination was brought, and the Court's going to apply claim preclusion. And the plaintiff tried to say, oh, well, but I, as of the first lawsuit, I hadn't exhausted my administrative process with the EEOC. And so the Court says, well, tough, claim preclusion still applies because it was in your control to get that letter from the EEOC. That's a procedural mechanism. All the facts that were the basis for the second case had happened when he filed the first case in Davis. Here, as I understand on the other side, they're saying the factual basis hadn't happened yet because they hadn't tendered the money for reinstatement. So how do you respond to that? So the facts triggering the right to reinstatement occurred in 2002 and 2003 when SARCO defaulted, and then their interests were diluted. They lost their partnership interest. And the amount that was due or the amount that would have had to be paid under that reinstatement clause was determined on December 9, 2003. And so all of the events giving rise to whether they proceeded with that claim occurred in the past. But if they hadn't offered the money up, how could they have brought the claim? Well, Montana had, in fact, denied that they had the right to this relief. So Montana had already triggered the right. But they knew that Montana would, in fact, decline the reinstatement demand. And in fact, if they hadn't tendered the money, how did they know that it would be rejected and they wouldn't be allowed to have the restitution take place? Because we've, in response to their original complaint, we filed a motion to dismiss. And we stated very clearly that they had no legal right to exercise the reinstatement clause. Well, at that point, they didn't, but they hadn't paid the money back yet with the interest. But that was a condition within their control, unlike other situations. It doesn't make it something that happened just because it was in their control. They control not to do it. But proceeding with coercive relief, they suffer the effects of merger and bar as a choice in going forward in the litigation. They were litigating the partnership agreement provisions under it. We had filed a proof of claim against ASARCO with respect to the partnership agreement in their obligations that were due as a former partner up to the date of December 9th, 2003. How could the claim be ripe if there was no tender made? Well, the claim could be ripe by virtue of our repudiation of the rights, which had occurred. And again, in Davis, ripeness is not required if the condition is under their control. Not required what? Is not required if the condition is within their control. They could have waited. They could have gone to the court and asked authority to pay the monies over if they wanted to tender. What if they didn't have the money at that time? But they did. How do we know what other commitments they had? Well, the automatic stay precluded any pre-petition obligations that they had to pay. And they had continual cash billed from $500 million, which was the amount they had at 2007 when they filed the adversary, up to over $1 billion as referenced by the court's confirmation were in the case. And so they clearly had the money. They simply decided not to proceed in triggering the condition preceding, and they proceeded with their coercive claim of fraudulent transfer. It's just a different theory. Instead of recovering under the contract, they asserted a theory to recover the same partnership interest, 49.9, under a different theory, the fraudulent transfer theory. And so these two lawsuits involved the same motivation and desire to recover the same partnership interest. Is the reinstatement right an executory contract or an option contract? I believe, and Montana believes, that it's not an executory contract. So it's an option? It's a right under an agreement that was litigated in the adversary proceeding. The right to reinstatement was litigated in bankruptcy? It was, Your Honor. They hadn't tendered the restitution yet. But they had the right to do so. And in fact, they raised the claim. In their original adversary, they raised the exact question, so never mind. But they dismissed the declaratory judgment, and Casper Weier does say declaratory judgments only have issue-preclusive effect. Correct, Your Honor. You're relying on the breach of contract claim that stayed in the case and was dismissed as part of the settlement. The original adversary raised the reinstatement clause exactly, and they withdrew that claim in the face of Montana's motion to dismiss the claim because they had no legal right to assert that claim. And then in the adversary, after the pursuit by ASARCO of their theory of fraudulent transfer, the ultimate dismissal with prejudice was based on settling the fraudulent transfer lawsuit, which was the coercive relief, and the proof of claim. And Montana had reduced its proof of claim from over $100 million by over $60 million in resolution on the final day of the confirmation hearing, and withdrew its objection to the ASARCO plan as part of that resolution as well. Montana had objected to the ASARCO plan and agreed to withdraw that objection as part of the resolution. This claim is also dealt with by virtue of the judicial estoppel theory that we have asserted, in that ASARCO certainly knew of the claim and it could have disclosed it appropriately under decades of this Court's precedent. In the Coastal Plains case, any claim with potential had to be disclosed on Schedule B. The Court ignored this Circuit's precedent in its second opinion on summary judgment and looked to other cases dealing with judicial estoppel and the disclosure requirement, but in fact did not adequately analyze those cases either, in that the cases that the Court cited from out of the district dealt with partially disclosed causes of action that only did not have adequate disclosure of the parties or all of the claims. Those were all Chapter 7 cases where there was disclosure to the trustee. The judge also made the mistake of looking at disclosure to the trustee, and in this case the debtor and the trustee are one and the same. This is a Chapter 11 case, of course, and disclosure to the creditors in the Court was the requirement, and that disclosure was never made at all. The judicial estoppel is an equitable doctrine. It's within the discretion of the trial court whether to apply that type of equitable relief. So should the standard of review just be abuse of discretion? No, it should not, Your Honor. There were errors of law made here in the standard that was used by the Court. The Court didn't apply the Coastal Plains standard, which has been utilized by this Court for years, in looking at the depth of disclosure that must be made. Every cause of action that existed must be disclosed. Thank you. Thank you. I'll leave the stage for rebuttal. Good afternoon, Your Honors, and may it please the Court, Ben Hatch on behalf of ASARCO, LLC, and ASARCO Master, Inc. Your Honors, this case arises out of a partnership agreement between the parties in which ASARCO paid $100 million in initial capital contribution and other payments later. Now, during a time of extreme financial distress for the company in the early 2000s, it did miss the capital payments that were required under the agreement, and for the value of about $5 million saw its interest, this valuable interest in the partnership, diluted down to nothing. Fortunately, the partnership agreement includes the right to seek reinstatement. It is a right or an option under the contract to come back, tender the funds with interest, as we did, and seek reinstatement. And that's exactly what we did in 2011, and that is the operative facts that led to the breach of contract suit that's before the Court today. Why didn't you tender the reinstatement money during the bankruptcy proceeding? Yes, Your Honor. This was raised just now about whether there was enough cash and whether that could have happened, and let me just say a few things in answer to Your Honor's question. First of all, ASARCO, leading up to and then in bankruptcy, was in a period of extreme financial distress. There were hard calls that had to be made about payment of payroll, buying tires for vehicles. Obviously, they cite a one snapshot of cash on hand, but that doesn't tell you what the obligations of the company were to its employees to maintain ongoing operations during this difficult and cash-strapped time frame. So I would submit to the Court, it's their burden on summary judgment to establish this defense. They have not established that ASARCO had the cash on hand to seek reinstatement during bankruptcy, given all of the other obligations that occurred, nor that the district court, I mean, excuse me, the bankruptcy court, would have approved that outlay. And let me just pause on that for a moment. As the Court is aware, ultimately ASARCO emerged extremely successfully from bankruptcy with full payment to all creditors, 100 cents on the dollar with interest. And so it's not a metaphysical question if the bankruptcy court would have approved the capital outlay that would have been required to buy back into this partnership, because, of course, the bankruptcy court would evaluate that on whether the assets, the benefit to the creditors merited the capital outlay. And there was, of course, an extreme cash shortage. And when you have a full payment plan, you don't need to pay out funds to get more funds into the bankruptcy estate. You've got all the funds you need. Moreover, buying into the partnership or seeking reinstatement into the partnership during bankruptcy would have, if successful, brought back on the benefits of the partnership, but all the ongoing concerns of participation in this mining partnership. You had to use the money to pay the creditors. Correct, Your Honor, and to fund ongoing operations. Obviously, you need to try to fund ongoing. This is a Chapter 11 effort to reorganize the company and emerge successfully, as was done from bankruptcy. Do you agree that if you could have made the tender and didn't do it, you'd lose? Thank you, Your Honor. No, I don't agree with that, because the fundamental distinction between this case and cases like Davis and cases that talk about claims that could have been brought is that, in this case, the right to reinstatement was like an option under the contract. And the value of an option, when there's no time limit, is that it can be exercised at the timing and the value of the option holder. And so, even if the option could have been exercised earlier, there's nothing in the law. There's nothing in the law of res judicata or judicial estoppel that says you're forced to exercise it at that earlier time. That would be depriving a SARCO of the value of that option. It's kind of like, I think, like if you enter into a rental agreement with an option to buy, and then let's say under that agreement that you get in a dispute about your rental payments and it ends up in court. Well, I don't think anyone would say, in that dispute about your rental payments, you have to decide just then if you ever want to exercise the option to buy for fear of losing it by virtue of claim preclusion. You're in a dispute about rent. Just like at the timing of the adversary proceeding, we were in a dispute with MRI about the fraudulent transfers, the dilutions before bankruptcy. There's a dispute about rent, and then there's an issue about whether you exercise your option to buy or we exercise our option for reinstatement. That's a separate right, no time limit. So when the cases talk about could have been brought, they're talking about matters that could have been brought based on the facts then existing. And the facts then existing at the time of the adversary proceeding did not involve the operative facts. And I think that's another key term from the law, the operative facts. Under this Court's transactional test, this Court's going to look to the common nucleus of operative facts. And the operative facts of this lawsuit are the tender in 2011 of the funds and the rejection of that tender. And ARCO did receive a letter saying that they would not honor any request for reinstatement, did they not? They did not respond. That's correct, Your Honor. We tendered the money. They did not respond. And then we followed with suit. During the bankruptcy, did you get a letter saying that they wouldn't reinstate you if you tendered? No, Your Honor. No, Your Honor. And the argument that was made today is that ASARCA should have been on notice by virtue of the motion to dismiss the original complaint in the adversary proceeding. Because, of course, that's the only complaint that had anything even close to having to do with this suit, the third cause of action. And in that response to the complaint, they did make the argument that under the dilution mechanism they used of the agreement that you couldn't get back in. But that wasn't a letter saying we won't allow you back in. That wasn't a definitive position that they would reject that. Even if it was, I don't think it matters because there hadn't been a tender. But that was not a rejection of the ability to come back in. You can imagine a lot of circumstances where under the facts, whether it be facts related to copper prices, facts relating to ongoing concerns of the partnership, ASARCA could have tendered the funds and MRI would have still had the right to say, you know what, welcome back to the partnership agreement. They never said that couldn't happen. They never foreclosed that. And in any event, that was a note that related to a claim we made in the adversary proceeding that we voluntarily dropped from that proceeding. And as the Court ruled below, that case was taken out of the proceeding. It was at most the only aspect of it that related to the present dispute was the declaratory relief request. So under three aspects of res judicata, they haven't met their standard. One, there was no common nucleus of operative fact. Two, it was a claim that was brought and voluntarily dismissed prior to judgment. So there was no final judgment on the merits with respect to that claim. If you will, ASARCA took it out and left that dispute for another day. That happened in the Casper Wire case too, didn't it? Yes, Your Honor. And Casper Wire is the third point why it doesn't apply as the judge ruled below, that an earlier declaratory judgment request does not foreclose a later request for coercive relief. Now, they make the argument that because the declaratory request was combined with coercive relief, therefore Casper doesn't apply. But what the restatement says is when a declaratory relief request is redundantly applied with your coercive relief request, that doesn't trigger the Casper exception. And that makes sense. Tell me that in plain language. Sure, Your Honor. There's lots of lawsuits where one company might sue another and say, you've infringed my patents, I want damages for patent infringement, and I want a declaration that you're infringing my patents, right? So that's an example where the restatement would say, just because you've brought a declaratory relief request, you don't insulate your lawsuit from the operation, the regular operation of res judicata as it would relate to your coercive request. It's not an insulation from the regular operation. But when your declaratory relief request has nothing to do with your coercive relief, which is the case here, as the district judge noted, then that's not what they're, it's not redundant of your coercive relief request. There was nothing about our declaratory relief request that asked for the same thing as our coercive relief. And that's where I think it's much more similar to the Allegheny case from the Third Circuit, where, very similar to Casper Wire, there was a backward-looking coercive request in that case, there was a forward-looking declaratory request. And the Third Circuit said, in a case like that, we're not going to apply res judicata to the declaratory forward-looking aspect of that case. Sure, to the matters that look back to whatever facts existed at the time that would have given rise to claims, sure, res judicata. But we're not going to penalize a plaintiff for having brought and settled the declaratory relief request. And I think that's very consistent with Casper that said, we're going to just analyze this in terms of issue preclusion. But do you agree there's still a separate question? So the declaratory judgment claim that was dismissed, under your view, doesn't preclude anything here. But there's still a question of whether the claims that did go forward in the adversary proceeding, that did reach judgment, whether those have preclusive effect. And that comes down to this debate you're having about whether it could have been brought. Exactly. I mean, it just seems to me both sides. That's really the issue. And Casper Wyer is really sort of a sideshow, because it seems to me, doesn't it come down to whether, you know, they say under Davis you should have brought these claims before. You distinguished Davis. I mean, isn't that the you have different answers to that question, but isn't that the question you both? I totally agree, Your Honor. That you apply the transactional test to, I would say, what was left in the adversary proceeding. Fraudulent transfer claim. Yeah, after the amendment. I would not argue that it ought to be applied prior to, because we amended, took it out. But you apply the transactional test to what was left at the end. And on this point, I would say they make several arguments in the nature that they thought this matter had been resolved. Those arguments, that is, that they thought the reinstatement right had been resolved. And all I would say to that is that those are arguments in their brief. They don't cite to facts to support that. And the facts that we do know are that Sarko had voluntarily dropped that declaratory relief request. All that resolved the 544 litigation at the end of the adversary proceeding was a stipulation and order dismissing with prejudice. There was no general release of claims. They got a stipulation dismissing with prejudice what was left. And Mr. Kame, who represented MRI on August 21 of 2009 in a status conference before the bankruptcy court, Mr. Kame said, and this is on the record at 846, he said, the lawsuit, this is MRI's attorney, the lawsuit that is on file is a 544-550 lawsuit, fraudulent transfer against us.  So they understood very well what they were having dismissed with prejudice. They got that fraudulent transfer done. It makes sense because this and the dismissal happened, by the way, just a few days later. As Mr. Kame also argued to the bankruptcy court, the fraudulent transfer was no longer a necessary action in bankruptcy because at that point the full payment plan was in the works. And you don't need to set aside a fraudulent transfer, which again would recoup money into the bankruptcy estate. You don't need to set aside and get that money if you're paying it with other funds. That's what Mr. Kame said. Let me ask a question about the value of the partnership. You quit meeting your cash calls in 2003, right? 2002 to 2003, yes, Your Honor. And then in 2011 you tried to get reinstated. And the value of the partnership had increased tremendously in that interim time, right? That's true, Your Honor. Yeah. So is this fortuitous or was it orchestrated or what's the real reason for the delay? Well, clearly, Your Honor, in between when we started missing the cash calls, again, there was a prolonged period of extreme financial distress on ASARCO's part. And that's when it did get diluted down to 0%. Again, for just the value of $5 million, it was diluted out to 0% in a partnership that it spent a lot more money into. But it's a valuable partnership. When you try to get back in, that partnership is. In 2011, it is a valuable partnership. And so what happened was ASARCO went through bankruptcy. It had all those cash problems. It had all the creditor problems. Ultimately, in 2009, it emerges from bankruptcy full payment to its creditors with interest. Now it's back in control of its own destiny, so to speak, as a business. It's emerged from bankruptcy. It can make decisions about cash on hand and where to invest its money. The partnership agreement has the reinstatement right. That reinstatement right has no time limit in it. This is a mining partnership, and mining partnerships can last a very long time. The agreement was from 1989. These problems didn't arise until the dilution problems, the missed cash call until 2002, 2003. And the partnership is still operating today. And so these agreements go on for a long time, and ASARCO decided that it was in its best interest to tender the funds and seek reinstatement into the agreement as the agreement allows it to do. Judge Hanen said you only get a little over 1 percent, though, his reading of the agreement, right? That was, Your Honor, that was his ruling on summary judgment. We respectfully disagree with that ruling, although we've not appealed it at this time. But that was his ruling that we could only get the last share before the last dilution in the agreement. I want to ask you about the estoppel. Judge Hanen found that you had sufficiently disclosed, I think based largely on Schedule G, where ASARCO master lists an interest in a joint venture agreement. It doesn't say anything specifically about a claim for reinstatement or a right to reinstatement. So just generally, why is that enough? And then second, isn't it contradicted, any notice that provided, contradicted by the Statement of Financial Affairs that listed that partnership interest but then said it was dissolved? Yes, Your Honor. Thank you for bringing me to judicial estoppel. To answer Your Honor's question, it was an adequate disclosure at the outset, because in the distinction I would make, the Coastal Plains case was cited by my fellow counsel. And certainly Coastal Plains teaches that claims need to be scheduled. But in practice, I think what that is applying to, clearly where your only relationship with another party is by virtue of a tort claim. You have no other, you know, they hit me with their car. I had no relationship with who hit me with their car before that. My only relation to them is by virtue of this claim I may have against them. And those claims need to be scheduled if they exist at the time. Here what we had was a partnership agreement that was disclosed on Schedule G. It was called joint venture, but I would argue it's sufficient. It's clear what it's referring to. So we had a partnership agreement. And there's nothing in the bankruptcy law that requires you to list every possible claim that could flow out of a contract or an agreement to say, you know, there's a lot of provisions in this contract, and you don't have to sit there and say we could claim this if they do that, right? If we were to tender and they were to say no, we could claim reinstatement. We could claim a dilution. You list the contract, and then either as we were the debtor in possession or the trustees, the case may be, can then inquire about the claims that arise under it. And that was the difference with coastal plains, because coastal plains there was no disclosure of the claims on the schedules. And most of the claims related to tortious interference, these types of issues that wouldn't be disclosed by examination of the contract itself. So there was the scheduling of the partnership agreement. And then, of course, later in the adversary proceeding in the original complaint, there was the right to reinstatement that was identified. And so Your Honor earlier mentioned the standard of review. And it is abuse of discretion. Now, obviously, if there's a clear legal error, that's going to be one issue. But I would submit there is no clear legal error. The district court, which also, by the way, confirmed the confirmed plan of the circuit. Let me ask about the abuse of discretion. Normally, judicial estoppel is about whether the court was misled, essentially. I'm not sure how it fits here, because Judge Hainan wasn't the bankruptcy judge. So should we give him that deference since he wasn't there in the middle of this bankruptcy to know if the bankruptcy court was misled? He actually was the judge who entered the confirmed plan. So he wasn't the hands-on bankruptcy judge, but he did have that visibility on the front end. But, yes, Your Honor, judicial estoppel comes up many times when it's a different judge in the second case than it was in the first case. And what the district judge did was the standard, of course, is that it has to be clearly or plainly inconsistent in the positions. Because, of course, it's an extreme sanction to apply judicial estoppel to foreclose a claim. And so the court's only going to apply it when the party is clearly speaking out of both sides of its mouth. And the judge below exercises discretion to find that wasn't the case. I see my red light's expired. Thank you, Your Honors. All right. Mr. Weegee. I wanted to clear up a few issues that were raised. The disclosure on the Statement of Affairs, in fact, listed the partnership as dissolved, and that's record of appeal 6432. So the disclosure was that the partnership was dissolved and not of vitality. Additionally, the plan that was filed prior to the entry of the stipulation had previously had a reservation of claims against Montana, and that the plan was struck through. Those provisions, 5.10 of the plan, were struck through, and there was no express retention in the plan of any claims against Montana Resources. And they had a schedule of preserved claims and nowhere to be found on those claims with respect to any claim reserved against Montana Resources. So you not only had no scheduling on the Schedule B of any reserved claims of any causes of action, they merely had a listing of a contract in Schedule G. I've been unable to locate a case that says merely disclosing a contract allows the disclosure of any cause of action emanating out of that contract. And, in fact, that's not the law. The coastal plains in all of this Court's decisions say you must disclose the cause of action. And so that's a key point. And we've raised with respect to in our page 16 of our reply brief. What about a potential cause of action? Yes, Your Honor. In fact, that's precisely what coastal plains says is potential causes of action. Any claim with any potential, and that's why we believe with respect to judicial estoppel this would have been a potential claim, because when the adversary was – initial adversary was filed and then we filed our motion to dismiss saying you have no reinstatement right, then they immediately dropped that claim for the reinstatement right, and they made the decision not to pursue that. They then proceeded not with a mixed claim but purely coercive relief going forward in the adversary. And so the test is based on coercive relief on the partnership agreement, and multiple rights were litigated in the adversary coercively with respect to the position of the parties. A couple of other points I want to make. The relief or the ability to obtain approval in the bankruptcy court, there was, at least based upon Masarco's view, a 21-to-1 return that they could have obtained because they believed their interest was worth $100 million and that all they would have to do is tender if Montana had accepted $5 million. And so, again, the business judgment rule says they would have been able to obtain that approval by the court. To be clear, there was no question that they had the cash to satisfy the tender requirement. I would note the district courts in Record 7004, the district court said, additionally, the debtor in the past few years has been operating a successful mining venture and has accumulated over $1 billion in cash assets while awaiting planned confirmation. Masarco, on the public record in the monthly operating reports, clearly had anywhere from $500 million up to $1.2 billion as of the confirmation. So there's no question that they had the cash. There was an automatic stay on prepetition obligations. They were negotiating those obligations in the plan. They were operating month-to-month their business, and they had ample cash. They were overflowing with cash, and they could have exercised this right from a cash standpoint. They were not broke, as they suggest. Again, they cited Allegheny as a case to rely on. In Allegheny, you had several key distinctions, but most importantly in Allegheny, there was an agreement that resolved the first lawsuit that expressly allowed the splitting of claims. There was an agreement to allow, after the settlement, pursuit of the claims following the settlement under the insurance agreement. And that agreement would look back and see if there were claims that might arise in the future, including audits or including a complex formula on how to determine what might be payable. In this instance before the court, you knew and Sarko knew what the obligations were, $5 million plus interest. All right. Thank you. We have the argument. Thank you.